UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No.: 08-22111-CIV  COOKE/BANDSTRA

AUGUSTO MEDINA,

        *Plaintiff*,

v.

UNITED CHRISTIAN EVANGELISTIC ASSOCIATION, *et al*.,

        *Defendants*.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

**THIS MATTER** is before the Court upon Defendants' Motion to Dismiss [DE 5], filed in Case Number 08-22111-CIV. The Defendants named in this action include all of the business entities and Frederick Eikerenkoetter (hereinafter "Rev. Ike"), individually.[1] The motion is fully briefed and ripe for adjudication.

**BACKGROUND**

Although the relevant facts here are, for all intents and purposes, identical to the facts set forth in this Court's February 27, 2009 order of dismissal in Case No. 08-21930, they will be repeated here, with some additional details as necessary. Plaintiff, Augusto Medina, was hired in 2001 by UCEA[2] as a driver for Rev. Ike. He was also required to act as Rev. Ike's valet and personal assistant. His duties, at various times, included dressing, massaging, manicuring, and

---

[1]Initially, Case Number 08-22111-CIV was consolidated with Case Number 08-21930-CIV and administratively closed. *See* DE 13. However, an order dismissing Case Number 08-21930 has since been entered, and the present case has been reopened.

[2]Plaintiff alleges that United Christian Evangelistic Association, United Christian Evangelistic Association of Florida, LLC, United Christian Evangelistic Association of Florida, Inc., and United Christian Evangelistic Association, Inc., were his joint employers. Defendants have not disputed this allegation. For ease and clarity, the acronym UCEA, as used in this order, shall refer to all named corporate or other business association Defendants in this case.

otherwise catering to Rev. Ike. During the course of his employment, Medina was also required to perform sexual acts upon Rev. Ike. In the course of approximately three years, Medina performed sexual acts on Rev. Ike at least six times, including fellatio and manual masturbation. On an unspecified number of occasions, Rev. Ike ejaculated on Plaintiff during fellatio or after Plaintiff fellated him. Medina alleges that he objected to performing these acts, but conceded to performing them for fear of losing his job. In response to Medina's objections, Rev. Ike would destroy work done by Medina in order to force him to redo it; assign him additional work; on at least one occasion required him to clean windows outside in the heat until Medina passed out and had to be taken to the hospital; would degrade and belittle Medina; and would threaten him with termination. On July 7, 2004 Medina filed an Equal Employment Opportunity Commission (EEOC) Charge of Discrimination, which was cross-filed with the Florida Commission on Human Relations on March 24, 2005[3]. Plaintiff also initiated suit against Rev. Ike and UCEA in the 11th Judicial Circuit in and for Miami-Dade County, Florida. This case was removed to federal court, where Medina subsequently filed an Amended Complaint (his fifth, including the amended complaints filed in state court) which is the operative complaint and subject of the motion to dismiss. Plaintiff brings claims of assault, battery, intentional infliction of emotional distress, negligent retention and/or negligent supervision, sexual harassment under both the Florida Civil Rights Act ("FCRA") and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and retaliation under both the FCRA and Title VII. The negligent retention and/or negligent supervision, sexual harassment, and retaliation claims are all against only UCEA, whereas the assault, battery, and intentional infliction of emotional distress counts allege that Rev. Ike is also personally liable.

---

[3]For sake of clarity, although not stated in the complaint and not relevant to the disposition of this motion, it appears from the record that Plaintiff's employment with UCEA ceased in April 2004.

**STANDARD OF REVIEW**

For purposes of a motion to dismiss under Rule 12(b)(6), the Court must accept plaintiff's allegations as true. *See Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984); *Holtzman v. B/E Aerospace, Inc.,* 2008 WL 214715, *1 (S.D. Fla Jan. 24, 2008) ("When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted.") (citing *Hishon*, 467 U.S. at 73). This, however, does not give a plaintiff *carte blanche* to merely aver a formulaic recitation of the elements of a claim supported by conclusory labels. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007) (citations omitted). The complaint may be dismissed if the facts as plead do not state a claim to relief that is plausible on its face. *See Twombly*, 127 S.Ct. 1955, 1968-69, 1974 (2007) (abrogating the old "unless it appears beyond a doubt that the plaintiff can prove no set of facts . . . ." standard and replacing it with a standard requiring "only enough facts to state a claim to relief that is plausible on its face."); *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1037 (11th Cir. 2001) ("Pleadings must be something more than an ingenious academic exercise in the conceivable.") (en banc) (quoting *United States v. Students Challenging Regulatory Ag. Proc.*, 412 U.S. 669, 688 (1973)). More simply, dismissal is appropriate if the plaintiff has not "nudged [its] claims across the line from conceivable to plausible." *Twombly*, 127 S.Ct. at 1974. Finally, at the motion to dismiss stage, under Fed. R. Civ. P. 12(b)(6), a court can only examine the four corners of a complaint. *Crowell v. Morgan Stanley Dean Witter Servs., Co., Inc.*, 87 F. Supp.2d 1287 (S.D. Fla. 2000).

**DISCUSSION**

Defendants have moved to dismiss all counts. Their first argument is that there can be no vicarious liability for the alleged intentional torts of assault and battery. I will address the

question of vicarious liability as the need arises in each individual claim.

### Assault

Although there is some argument between the parties as to the proper definition of "assault," the Florida courts have, for over sixty years, held to a singular definition. In *Winn & Lovett Grocery Co. v. Archer*, the Supreme Court of Florida defined assault: "An assault is any intentional, unlawful offer of corporeal injury to another by force, or force unlawfully directed toward the person of another, under such circumstances as to create a well-founded fear of imminent peril, coupled with the apparent present ability to effectuate the attempt if not prevented." *Archer*, 171 So. 214, 217 (Fla. 1936). *Archer* remains good law and the standard definition. *See Newman v. Gehl Corp.*, 731 F.Supp. 1048, 1050 (M.D. Fla. 1990) (noting that the parties agreed as to the proper definition and reciting nearly verbatim the definition in *Archer*, without citation); *McDonald v. E. I. Ford*, 223 So. 2d 553, 555 (same with citation to 3 Fla.Jur., Assault and Battery, §3); *Lay v. Kremer* 411 So. 2d 1347, 1349 (Fla. 1st DCA 1982) (reciting a nearly identical definition); *Colony Ins. Co. v. Barnes*, 189 F. App'x 941, 943 (11th Cir. 2006) (per curiam) (unpublished decision) (stating that assault is defined under Florida law and quoting the *Archer* definition); 3A Fla.Jur. 2d, Assault—Civil Aspects, § 7 ("The creation of a well-founded fear of imminent peril in the victim is an essential element of tortious assault. An alleged victim who is unaware of an attempted assault, or who is not placed in fear of imminent harm as a result of the attempted assault, has suffered no compensable harm.") (footnote omitted); 3 Fla. Pl. & Pr. Forms § 22:6 ("The prevailing view is that mere words alone are not sufficient to constitute assault where they are unaccompanied by any menacing action or attitude and do not constitute a threat or do not put the person toward whom they are directed in fear.") (footnote omitted).

Plaintiff's use of an abbreviated definition from the dissenting opinion in *Doe v. Evans*,

814 So. 2d 379, 379 (Fla. 2002), is inappropriate.  Not only is the definition stated in direct contradiction to Florida precedent but, when read in context, it is also *obiter dictum*.  *See id.*

Plaintiff's Amended Complaint states, in relevant part: "Rev. Ike's actions created a reasonable fear of imminent peril in MEDINA, and Rev. Ike had the present ability to effectuate the unlawful and offensive touching of MEDINA."  *See* Am. Compl. ¶46.  However, nowhere in the Amended Complaint does Medina state how he was put in imminent peril.  There is no allegation of threat of force in the Amended Complaint.  Moreover, in response to the motion to dismiss, Plaintiff does not argue that he was ever in fear of imminent peril.  Instead, Plaintiff argues that "he was afraid of losing his job, [and] he constantly feared the immediate and/or imminent offensive sexual contact."  This cannot be the same as a well-founded fear of imminent peril.  The definition specifically refers to "corporeal injury," not fear of offensive contact.

Medina has done precisely what the Supreme Court and Eleventh Circuit have said is insufficient to state a claim for relief -- he has provided only a formulaic recitation of the elements of a claim for assault.  *See Watts,* 495 F.3d at 1295 ( "Of course, 'a formulaic recitation of the elements of a cause of action will not do.'") (quoting *Twombly*, 127 S.Ct. at 1965 (citations omitted)).  For the reasons stated above, I therefore conclude that Medina's assault claim must be dismissed for failure to state a claim upon which relief can be granted.  Because I find that this claim fails, I need not address the question of vicarious liability for the alleged assault.

### Battery

In Florida, "[b]attery consists of the infliction of a harmful or offensive contact upon another with the intent to cause such contact or the apprehension that such contact is imminent." *Quilling v. Price*, 894 So. 2d 1061, 1063 (Fla. 5th DCA 2005) (citing *Paul v. Holbrook*, 696 So. 2d 1311 (Fla. 5th DCA 1997)); *see also Colony Ins. Co.,* 189 F. App'x at 943 (quoting *Holbrook*,

686 So. 2d at 1312).  It is readily apparent that Plaintiff has adequately plead a claim for battery against Rev. Ike, at least with regards to Plaintiff's allegations that Rev. Ike placed Plaintiff's hand on Rev. Ike's penis.  *See* Am. Compl. ¶¶26-28.

As to the remaining alleged incidents of battery, the issue appears to boil down to the defense of consent.  Defendants argue that Medina consented to the sexual acts, and that therefore, no battery could occur.  Medina counters that he maintained his objections to the sexual contact and did not consent.  He argues that any consent implied by his performing the sexual acts was not truly consent, but was consent under fear of losing his employment, otherwise known as consent under duress, which can, under the right circumstances vitiate the defense of consent.  *See* Restatement (Second) of Torts §892B (2008) ("Consent is not effective if it is given under duress.").  The Court has some reservations about whether Florida law supports a claim of "economic duress" to invalidate apparent consent, but this is not an issue to be decided on a motion to dismiss.  *Cf.  NN Investors Life Ins. Co. v. Professional Group, Inc.*, 468 So. 2d 532, 533 (Fla. 3rd DCA 1985) ("But if the threat is less direct, being merely one of future arrest, or of "economic" duress, such as loss of employment, the courts have refused to say that the consent given , however reluctant it may be, is ineffective, so as to establish another tort [, the tort of duress].") (quoting W. Prosser, *The Law of Torts* § 18 at 106-07 (4th ed. 1971)); *Reavis v. Slominski*,  551 N.W.2d 528, 542 (Neb. 1996) (plurality opinion agreeing with defendant that the lower court erred in refusing to give a jury instruction stating that "A threat of economic duress such as the threat of a future loss of employment is not sufficient to invalidate the consent given.")

Plaintiff has sufficiently plead a claim for battery against Rev. Ike.  On the facts presented in the Amended Complaint, the defense of consent is an issue to be addressed at the summary judgment or trial stages.  Also to be addressed at a later stage is the question of employer

liability. Medina has set forth sufficient allegations, supported by facts which I must take as true, to maintain a vicarious liability action for battery against UCEA. Defendants' conclusory arguments that the actions were outside the scope of Rev. Ike's employment cannot support a motion to dismiss.

### Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress (hereinafter "IIED") under Florida law a plaintiff must show: "1) deliberate or reckless infliction of mental suffering by defendant; 2) by outrageous conduct; 3) which conduct of the defendant must have caused the suffering; and 4) the suffering must have been severe." *Golden v. Complete Holdings, Inc.*, 818 F.Supp. 1495, 1499 (M.D.Fla.1993) (citing *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278 (Fla.1985)). The *McCarson* court found held that to prevail on an IIED claim, the conduct must be

> so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*McCarson*, 467 So. 2d at 278-79 (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). Whether Defendants', specifically Rev. Ike's, conduct meets this standard is a question of law to be answered by the Court. *Ayers v. Wal-Mart Stores, Inc.*, 941 F. Supp. 1163, 1167-68 (M.D. Fla. 1996) (citing *Dependable Life Ins. Co. v. Harris*, 510 So. 2d 985, 988 (Fla. 5th DCA 1987) and *Ponton v. Scarfone*, 468 So. 2d 1009, 1011 (Fla. 4th DCA 1985)). It is noteworthy that "Florida courts have consistently rejected claims for intentional infliction of emotional distress relating to sexual harassment . . . ." *Golden*, 818 F. Supp. at 1499. This does not foreclose Plaintiff's claims, however. "The viability of a claim for intentional infliction of emotional distress is highly fact-dependent, and turns on the sum of the allegations in the specific case at

bar." *Vernon v. Med. Mgmt. Assoc. of Margate, Inc.*, 912 F. Supp. 1549, 1558 (S.D. Fla.1996).  I find the alleged acts of oral sodomy under duress to be sufficiently severe and outrageous as to satisfy the second element of the cause of action.  *See, e.g., Stockett v. Tolin*, 791 F. Supp. 1536, 1556 (S.D.Fla.1992) (finding liability for intentional infliction of emotional distress where the plaintiff was repeatedly offensively touched, pinned against the wall, physically attacked, and subjected to offensive sexual comments); *Vernon,* 912 F. Supp. at 1560 (holding that, at the motion to dismiss stage, the sum of the allegations of unwelcome groping, squeezing, tickling, looking up plaintiff's skirt, and unwelcome sexual comments were sufficient to support a claim of intentional infliction of emotional distress).

Defendants have also argued that Plaintiff's apparent inclination to return to work for the Defendants, and his lack of an allegation that he has sought treatment for his emotional suffering, completely undermine a claim for IIED.  I do not agree.  The Amended Complaint explicitly states that Medina has suffered severe emotional pain, as well as anguish and physical injury as a result of Defendants' conduct.  Although the severity of the suffering may be called into question by Plaintiff's willingness to return to his former job, that and any other proof of Plaintiff's emotional distress is to be determined through summary judgment motions or at trial.  For purposes of the motion to dismiss, the allegations are sufficient to state a claim for intentional infliction of emotional distress.  And, for the same reasons that applied to the battery claim, the vicarious liability claims here must also remain.

### Negligent Retention / Negligent Supervision

"Negligent retention and negligent supervision are cognizable under Florida law 'when, during the course of employment, the employer becomes aware, or should have become aware, of problems with an employee that indicates his unfitness, and the employer fails to take further action such as investigation, discharge, or reassignment.'" *Samedi v. Miami-Dade County,* 134

F. Supp. 2d 1320, 1352 (S.D.Fla. 2001) (quoting *Grice v. Air Prods. & Chems., Inc.*, 82 Fair Empl. Prac. Cas. (BNA) 532, *available at* 2000 WL 353010, at *14, (N.D.Fla. Feb.17, 2000)). As both claims sound in negligence, Plaintiff is required to prove duty, breach, causation, and damages to sustain either or both claims. *See Samedi*, 134 F. Supp. 2d at 1353. Moreover, "the underlying wrong allegedly committed by an employee in a negligent supervision or negligent retention claim must be based on an injury resulting from a tort which is recognized under common law." *Scelta v. Delicatessen Support Servs., Inc.*, 57 F. Supp. 2d 1327, 1348 (M.D.Fla.1999).

First, I note that while Defendants' argument that this claim must fail because there is no underlying tort may eventually prevail, it cannot do so at this point because I have already determined that the battery claim may proceed. *See supra*; *Samedi*, 134 F. Supp. 2d at 1353 n. 30 ("[A]llegations of assault and battery can provide the type of underlying wrong sufficient to sustain claims of negligent supervision or negligent retention."). Second, Medina's Amended Complaint states explicitly that UCEA was "actually or constructively put on notice of Rev. Ike's unfitness when Andrew Brown complained that he was sexually harassed by Rev. Ike." Am. Compl. ¶88. This, combined with several related allegations and supporting paragraphs, more than sufficiently placed Defendants on notice of Plaintiff's claims and the bases for them. The extent of the notice, if any, and the veracity of the alleged previous complaint, is not to be tested on a motion to dismiss. *See Hishon,* 467 U.S. at 73 ("For purposes of a motion to dismiss under Rule 12(b)(6), the Court must accept plaintiff's allegations as true."). Lastly, Defendants provide no legal support for their argument that Plaintiff cannot plead both that Rev. Ike negligently retained or supervised himself, and that UCEA negligently retained and supervised Rev. Ike. The negligent retention / negligent supervision claims satisfy the pleading requirements set forth in the Federal Rules of Civil Procedure as interpreted by the Supreme Court.

### Sexual Harassment

Defendants move to dismiss the state and federal sexual harassment claims, relying principally on the argument that the sexual contact was consensual and therefore not subjectively severe and pervasive. In addition, Defendants argue that Plaintiff has failed to sufficiently allege how he has exhausted his administrative remedies. Both of these arguments are without merit.

Decisions addressing sexual harassment under Title VII also apply to FCRA claims of sexual harassment. *Harper v. Blockbuster Entm't Corp.* 139 F.3d 1385, 1387 (11th Cir. 1998) ("The Florida courts have held that decisions construing Title VII are applicable when considering claims under the Florida Civil Rights Act, because the Florida act was patterned after Title VII.").

> To establish a hostile-environment sexual-harassment claim under Title VII based on harassment by a supervisor, an employee must show: (1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable.

*Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (citing *Henson v. City of Dundee*, 682 F.2d 897, 903-05 (11th Cir.1982)).

It is remarkable to the Court that both parties failed to cite the controlling Supreme Court precedent directly on point. Instead of wasting both their time and this Court's time, a few minutes of simple research would have uncovered that the question is not whether participation in the sexual acts was voluntary, but whether it was unwelcome. Defendants strenuously argue that Plaintiff's actions were consensual, and thereby the alleged harassment was not subjectively

(or even objectively) severe and pervasive.  This entirely misses the function of the sexual harassment statutes.  The Supreme Court made clear in *Meritor Sav. Bank, FSB v. Vinson* that

> the fact that sex-related conduct was "voluntary," in the sense that the complainant was not forced to participate against her will, is not a defense to a sexual harassment suit brought under Title VII. The gravamen of any sexual harassment claim is that the alleged sexual advances were "unwelcome." 29 CFR § 1604.11(a) (1985). While the question whether particular conduct was indeed unwelcome presents difficult problems of proof and turns largely on credibility determinations committed to the trier of fact, the District Court in this case erroneously focused on the "voluntariness" of respondent's participation in the claimed sexual episodes. The correct inquiry is whether respondent by her conduct indicated that the alleged sexual advances were unwelcome, not whether her actual participation in sexual intercourse was voluntary.

477 U.S. 57, 68 (1986).  Here, Plaintiff has repeatedly claimed that the sexual contact was unwelcome and objected to.  This is all that is necessary in the Amended Complaint.  Similar to the IIED claim, there may be some doubt as to how subjectively severe and pervasive the alleged harassment was, but this doubt does not sink the claim at the motion to dismiss stage.

Additionally, I cannot agree with the argument that the claims must be dismissed because Plaintiff has not specified how he has exhausted his administrative remedies.  Plaintiff has alleged that he filed an EEOC charge that was cross-filed with the Florida Commission on Human Relations and that all conditions precedent have occurred or been performed.  Federal Rule of Civil Procedure 9(c) provides that "[i]n pleading the performance or occurrence of conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed. But when denying that a condition precedent has occurred or been performed, a party must do so with particularity." Fed.R.Civ.P. 9(c).  *See also Jackson v. Seaboard Coast Line R. Co.,* 678 F.2d 992, 1010 (11th Cir. 1982) (explaining application of Rule 9(c) in a Title VII action).  Plaintiff has met this standard and Defendant, in arguing for dismissal, has not denied with particularity that any condition precedent has not been met.  Accordingly, both the Title VII

and FCRA based sexual harassment claims will not be dismissed.

### Retaliation

For the same reasons expressed above, the Title VII and FCRA retaliation claims are analyzed together. "[A] plaintiff alleging a retaliation claim under Title VII must begin by establishing a prima facie case; the plaintiff must show (1) that [he] engaged in statutorily protected activity, (2) that an adverse employment action occurred, and (3) that the adverse action was causally related to the plaintiff's protected activities." *Coutu v. Martin County Bd. of County Com'rs*, 47 F.3d 1068, 1074 (11th Cir. 1995).

Defendants first contend that the only alleged statutorily protected activities were Plaintiff's alleged objections to Rev. Ike's sexual advances. They argue that because Medina consented to perform the sexual acts on Rev. Ike, he cannot assert that his alleged objections are statutorily protected expressions. This argument suffers from the same defect as Defendants' sexual harassment argument; to wit, the question is not one of voluntariness, but one of unwelcomeness. Even if Medina did eventually consent to perform the acts, his objections would still be statutorily protected expressions.

Defendants' second argument, that no adverse employment action occurred, fairs no better. For retaliation to be actionable, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Ry. Co. v. White,* 548 U.S. 53, 67-68 (U.S.) (citations and internal quotation marks omitted). "[N]ormally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Id*. However, this is an objective standard dependant on the particular circumstances for a determination of material adversity. Medina has alleged that Rev. Ike, in retaliation for Medina's opposition to performing sexual acts,

intentionally ruined work previously performed, only to require Plaintiff to redo it; unreasonably criticized Medina's work with the intent to demoralize him; forced Plaintiff to work in the heat without regard to his health; increased his work load; and threatened to withhold Medina's pay if Medina would not perform oral sex on him.

These allegations state a claim for retaliation under Title VII and the FCRA. The actual adversity or harm caused by these actions can be challenged on a motion for summary judgment or at trial, but the motion to dismiss will be denied. Defendants' argument regarding exhaustion of administrative remedies for the retaliation claims has no more merit than it did in the sexual harassment claims.

### CONCLUSION

For the reasons stated above Defendants' Motion to Dismiss [DE 5] is **GRANTED** *in part* and **DENIED** *in part* as follows:

(1) The Motion to Dismiss is **GRANTED** as to Count I (Assault), and Count I (Assault) is **DISMISSED** as to all Defendants;

(2) The Motion to Dismiss is **DENIED** as to all other Counts.

**DONE and ORDERED** in chambers, Miami, Florida, this 9th day of March 2009.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*The Hon. Ted E. Bandstra*
*Counsel of Record*