UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 08-22111-CIV COOKE/BANDSTRA

AUGUSTO MEDINA,

    *Plaintiff*,

vs.

UNITED CHRISTIAN EVANGELISTIC
ASSOCIATION, *et al.*,

    *Defendants*.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S EXPERT, RENEE HERRERA, PH.D.

This matter is before me on Defendants' Motion to Strike Plaintiff's Expert, Renee Herrera, Ph.D., and for sanctions [D.E. 85]. The Parties have fully briefed this Motion, and I have reviewed the arguments, the record, and the relevant legal authority. For the reasons that follow, Defendants' Motion to Strike Plaintiff's Expert is granted in part, and denied in part.

### I. BACKGROUND

This is a sexual harassment case, brought by Augusto Medina against his former employer, United Christian Evangelistic Association, United Christian Evangelistic Association of Florida, LLC, United Christian Evangelistic Association of Florida, Inc., and United Christian Evangelistic Association, Inc., and Frederick Eikerenkoetter ("Rev. Ike") (collectively referred to as "UCEA"). Plaintiff claims that, during his employment with UCEA, he was forced to fellate and masturbate Rev. Ike, approximately seven or eight times. Plaintiff alleges that during several of these encounters Rev. Ike ejaculated on him. Plaintiff claims to have kept several articles of

clothing containing Rev. Ike's seminal fluids. UCEA vehemently denies that any sexual acts transpired between Rev. Ike and Plaintiff. Furthermore, UCEA argues that to the extent that Plaintiff does have clothing with Rev. Ike's ejaculate, the fluids could have come from a secondary transfer.

Plaintiff hired Dr. Renee Herrera, Ph.D. to examine four articles of clothing, and determine whether the source of the stains on the clothing was Rev. Ike's ejaculate. Dr. Herrera holds a doctorate and master's degree in genetics, and a bachelor of science degree in biology. (Dr. Herrera Curriculum Vitae 1 [D.E. 55-3].) He is a Professor in a medical school, has participated in countless genetics-themed symposia the world over, and is the recipient of numerous research grants. (*Id.* at 1, 3-6, 11-14.) He is also an expert in forensic DNA fingerprinting, and has testified in over 100 criminal cases over the course of twenty years. (*Id.* at 40; Herrera Dep. 6, June 3, 2009 [D.E. 85-2].) Using STR DNA analysis, Dr. Herrera determined that the DNA taken from a white t-shirt belonging to Plaintiff matched Rev. Ike's DNA. Dr. Herrera also concluded that the stain pattern found on the same white t-shirt was inconsistent with a secondary transfer of fluid. Dr. Herrera, however, readily admitted that he was not an expert in stain analysis, had never attended training on stain analysis, and had no ties to any organizations affiliated with experts in stain analysis. (Herrera Dep. 6 [D.E. 85-2].)

## II. LEGAL STANDARDS

If technical knowledge "will assist the trier of fact to understand the evidence or to determine a fact in issue," then a qualified expert may testify, subject to certain conditions. Fed. R. Evid. 702. An expert's testimony must be "based upon sufficient facts or data," must be "the product of reliable principles and methods," and "the witness [must have] applied the principles

and methods reliably to the facts of the case." Fed. R. Evid. 702. District courts act as "gatekeepers" to the admission of expert testimony, ensuring that any and all expert testimony or evidence admitted is not only relevant, but reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). The test of reliability is a flexible one. *Id.* at 594; *Kumho Tire Co., Ltd., v. Carmichael*, 526 U.S. 137, 141 (1999). "The gatekeeper role . . . is not intended to supplant the adversary system or the role of the jury: '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1311 (11th Cir. 1999) (quoting *Daubert*, 509 U.S. at 596).

Under Federal Rule of Civil Procedure 26(a)(2)(B)(v), a party intending to proffer an expert witness must disclose "a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition." The purpose of the disclosure requirement of Fed. R. Civ. P. 26(a)(2)(B) is to afford the opposing party a "reasonable opportunity to prepare for effective cross-examination." *Watkins v. Vestil Mfg. Corp.*, 2009 WL 277602 (N.D. Ga. 2009). Providing a list of the prior cases in which an expert has testified "allows the adverse party to locate other testimony given by the expert witness which might be relevant to his proposed testimony in the pending case." *Nguyen v. IBP, Inc.*, 162 F.R.D. 675, 682 (D. Kan. 1995).

Rule 37 provides sanctions for violations of Rule 26(a)(2)(B), including striking the expert witness altogether, or compelling disclosure of delinquent or deficient discovery. If the failure to disclose was "substantially justified or is harmless," then the party may still use that

witness.  *See* Fed. R. Civ. P. 37(c)(1); *OFS Fitel, LLC v. Epstein, Becker and Green, P.C.*, 549 F. 3d 1344, 1363 (11th Cir. 2008).

### III. ANALYSIS

A.  **Disclosure Requirements**

UCEA argues, Dr. Herrera should not be permitted to testify because Plaintiff failed to provide a list of all the cases in which Dr. Herrera testified during the previous four years, in contravention of Rule 26(a)(2)(B)(v).  Plaintiff initially failed to comply with the disclosure requirements of Rule 26, however, Plaintiff has since provided the requisite list of cases in response to my order compelling this discovery.  (*Compare* Order Compelling Expert Witness Disc. [D.E. 114] *with* Notice of Compliance with Court's Order to Supplement Expert Disclosure [D.E. 122].)

In this case, Plaintiff did not provide a list of cases in which Dr. Herrera has testified or been deposed as an expert until compelled to do so.  Had this case gone to trial as scheduled in October 2009, this failure would have been prejudicial to Defendants.  *Cf. Watkins*, 2009 WL 277602, at *2 (finding that failure to include court and case number in expert witness's disclosure statement was not harmless).  This matter, however, was continued on Defendants' motion because a personal representative had not been appointed to Rev. Ike's estate by the eve of the trial period.  The additional time afforded, through the continuance, has mitigated the harmful effects of Plaintiff's initial failure to disclose this information.  Accordingly, Defendants' Motion to Strike Plaintiff's Expert on these grounds is denied.

### B. Stain Pattern Analysis

Defendants seek to strike Dr. Herrera's stain pattern testimony, arguing Dr. Herrera is not qualified to render an expert opinion on stain patterns.  Determining whether an individual is qualified as an expert in the field in which he is offering an opinion is a "threshold determination" in deciding whether to admit expert evidence.  *See Richter v. Home Depot, U.S.A., Inc.*, 2009 WL 2914256, at *4 (M.D. Fla. 2009).  The expert must be qualified in a manner that relates to the opinion offered.  *Id.*  "[A]n expert, whether basing testimony upon professional studies or personal experience, [must] employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kumho*, 526 U.S. at 152.

Dr. Herrera testified in deposition that he had no particular expertise or training in stain pattern analysis.  In essence, his conclusion that the stain pattern was not consistent with a secondary transfer was little more than a lay person's conjecture based on a visual inspection of the shirt.  Given the weight that an expert's testimony may carry, I find that such an unreliable opinion does not meet the requirements of Federal Rule of Evidence 702.  UCEA's Motion to Strike the testimony by Dr. Herrera regarding the stain pattern is granted.

### C. DNA Analysis

Finally, Defendants seek to exclude Dr. Herrera's testimony regarding the DNA analysis on the basis that he failed to follow proper DNA testing protocols, failed to properly document the DNA testing, and failed to identify the type of fluid from which the DNA analysis was drawn.

### *1. Whether Dr. Herrera's DNA Testing Protocol Renders his Opinions Unreliable*

UCEA argues, Dr. Herrera's DNA analysis is unreliable because his laboratory is not accredited in Florida, and because his lab does not have a written policy and procedures manual. UCEA also argues, because Dr. Herrera testified that he did not test for either degradation or contamination, he should be stricken as a witness. In other words, Defendants are challenging the specific manner in which Dr. Herrera conducted the STR DNA analysis, not the general reliability of STR DNA analysis.

Considering Dr. Herrera's extensive credentials, I cannot say that the fact that his lab is not accredited in Florida - a requirement that apparently does not apply to his research lab - renders his analysis of the DNA unreliable. Furthermore, Dr. Herrera testified in some detail on the protocol that he used, provided by the Applied BioSystem Company, in conducting the STR DNA analysis. Defendants have not raised any concerns about this protocol, opting instead to present isolated responses from Dr. Herrera's deposition. Defendants' points are properly made during the cross-examination of this witness, but do not form a basis to strike this expert.

Finally, I do not find that the fact that Dr. Herrera did not test for degradation or contamination renders his testimony unreliable. Degradation of DNA occurs when the quality of a DNA sample is compromised due to exposure to "heat, light, moisture, or other degrading elements." *Dist. Atty's Office for the Third Judicial Dist. v. Osborne*, 129 S. Ct. 2308, 2327 (2009) (Alito, J., concurring) (quoting Murphy, The Art in the Science of DNA: A Layperson's Guide to the Subjectivity Inherent in Forensic DNA Typing, 58 Emory L.J. 489, 497 (2008)). Thus, degradation is a concern for Plaintiff in this case, who might incur a false *negative* due to degradation. This is not an issue under these circumstances.

Contamination, on the other hand, occurs when foreign matters mixes with the sample purported to contain DNA. Considering that Dr. Herrera's testimony is limited to the results obtained from testing the white t-shirt against the DNA of Plaintiff and Rev. Ike, the possibility that the sample was contaminated prior to reaching Dr. Herrera can be properly addressed on cross-examination. This issue goes to the weight of the evidence, not its admissibility. *See Ballou v. Henri Studios, Inc.*, 656 F.2d 1147 (5th Cir. 1981).

### 2. *Whether Dr. Herrera's Failure to Report Negative Results and to Properly Document his DNA Testing Renders his Opinions Unreliable*

Defendants argue, Dr. Herrera's inability to remember the color of the garments that he tested, and his failure to document the negative results that he obtained from three of the four garments, justifies excluding his testimony at trial. The fact that Dr. Herrera could not recall, from memory, the color of some of the articles of clothing does not undermine the reliability of the DNA test that he ran. Likewise, his failure to report the negative results from three of the four garments goes to the weight of this his testimony. Defendants are free to question Dr. Herrera about this at trial.

### 3. *Whether Dr. Herrera's Failure to Identify the Fluid Renders his Opinions Irrelevant*

Defendants contend, Dr. Herrera's opinions are irrelevant because they do not address the type of fluid that caused the stain on the white t-shirt. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Here, Plaintiff seeks to prove that the stain found on his white t-shirt was caused by Rev. Ike's ejaculate. Certainly, a positive DNA identification between the stain and Rev. Ike increases the

likelihood that the stain was caused by Rev. Ike's ejaculate.  Again, UCEA is free to present the jury with its own theory of how the DNA got on Plaintiff's t-shirt, and to draw out the fact that Dr. Herrera cannot say what type of fluid caused the stain.

## IV.  CONCLUSION

For the foregoing reasons, it is **ORDERED and ADJUDGED** that Defendants' Motion to Strike Plaintiff's Expert, Renee Herrera, Ph.D., and for sanctions [D.E. 85] is **GRANTED in part, and DENIED in part.**  This expert is not permitted to render testimony regarding the stain pattern analysis, he may however testify as to the results of the DNA analysis that he conducted. Sanctions are not warranted under the circumstances.

**DONE and ORDERED** in Chambers, at Miami, Florida, this 19th day of November 2009.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:

*The Honorable Ted E. Bandstra*
*Counsel of Record*

*The Honorable Ted E. Bandstra*
*Counsel of Record*